**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>NEW YORK CLASSIC MOTORS, LLC,<br><br>Debtor. | NOT FOR PUBLICATION<br><br>Case No. 21-10670 (MG) |

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO
DISMISS AND FOR OTHER RELIEF**

*A P P E A R A N C E S:*

ROZARIO TOUMA, P.C.
*Attorneys for Hudson River Park Trust and Daniel P. Kurtz*
55 Broadway, 20th Floor
New York, NY 10006
By:   Rovin Rozario, Esq

KIRBY AISNER & CURLEY LLP
*Attorneys for the Debtor*
700 Post Road, Suite 237
Scarsdale, New York 10583
By:   Erica R. Aisner, Esq.

ARENT FOX LLP
*Proposed Counsel for the Official Committee of Unsecured Creditors*
1301 Avenue of the Americas, Floor 42
New York, NY 10019
By:   George P. Angelich, Esq.
      Beth M. Brownstein, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion of Hudson River Park Trust ("HRPT") and Daniel P. Kurtz ("Kurtz," and together with HRPT, "Movants") for an order: (1) dismissing the bankruptcy petition pursuant to 11 U.S.C. § 1112(b), and (2) declaring that the automatic stay does not prevent the termination of the Concession Agreement (defined below) pursuant to its terms, or acts to recover possession of the premises occupied by New York Classic Motors, LLC (the "Debtor"), pursuant to 11 U.S.C. § 362(b)(10) and (n)(1)(B),[1] or, alternatively, conditioning, modifying or dissolving the automatic stay pursuant to 11 U.S.C. § 362(d). ("Motion to Dismiss," ECF Doc. # 36.)

On May 27, 2021, the Debtor filed its opposition to the Motion to Dismiss. ("Opposition," ECF Doc. # 55.) The declaration of Zachary Moseley is attached as Exhibit A to the Opposition. ("Moseley Decl.," ECF Doc. # 55-1.) That same day, the Official Committee of Unsecured Creditors (the "Committee") filed a statement and reservation of rights in support of the Opposition. ("Opposition Statement," ECF Doc. # 58.)

For the following reasons, the Motion to Dismiss is **DENIED.** The Court also concludes that the automatic stay applies to the Concession Agreement and the stay

---

[1] Section 362(n)(1)(B) provides:

> Except as provided in paragraph (2), subsection (a) does not apply in a case in which the debtor . . . (B) was a debtor in a small business case that was dismissed for any reason by an order that became final in the 2-year period ending on the date of the order for relief entered with respect to the petition.

11 U.S.C. § 362(n)(1)(B). Movants fail to explain how this section applies.

2

should not be lifted to permit HRPT to take any action in state court to recover possession of the Property.

## I. BACKGROUND

The Debtor is a New York limited liability company organized under New York law that maintains its principal place of business at 1 Pier 76, New York, New York (the "Premises"). (Moseley Decl. ¶ 6.)

The Debtor, together with its affiliates, operates an automobile showroom that is open to the public and a luxury private automobile club that features a lounge, two bars, a restaurant, and a terrace overlooking the Hudson River. (*Id.* ¶ 7.) In the spring of 2016, the Debtor entered into a concession agreement (the "Concession Agreement") with HRPT under which it took possession of the Premises at the southern annex of Pier 76. (*Id.*) In accordance with the Concession Agreement, the Debtor provides a number of services to the public at no cost: monthly auto shows, mechanic/shop classes, outdoor seating at the southern portion of the Premises, and science and technology programming, which has included F1 in Schools (an international STEM competition for grade school). (*Id.* ¶ 9.) The Debtor currently has nine employees that assist in running its operations. (*Id.*)

As a result of the COVID-19 pandemic, the State of New York issued guidelines requiring full and partial closures of restaurants and in-person events. (*Id.* ¶ 10.) As a result of these guidelines, the Debtor and its affiliates contend they lost $4 million in revenues. (*Id.*) Even before the shutdown, the Debtor experienced a decrease in its revenues. (*Id.* ¶ 11.) The Debtor reached out to HRPT and requested relief. (*Id.*) The

parties agreed that the Debtor would only have to pay half rent, which was accepted by the Movants for at least six months between June and November of 2020.

On January 4, 2021, HRPT served a notice of default and demand to cure (the "Rent Demand") and threatened termination of the Concession Agreement for noncompliance. (*Id.* ¶ 13.) On that same day, HRPT served a letter invoking its right to terminate the Concession Agreement on one-year's notice because of proposed redevelopment of the Premises ("Termination Notice"). (*Id.* ¶ 14.) The Debtor disputes that the Termination Notice was properly issued under Article 9 of the Concession Agreement. (*Id.*)

On February 1, 2021, to preserve its rights and protect its interest in the Premises and the Concession Agreement, the Debtor commenced an action in New York Supreme Court, New York County (the "State Court") captioned *New York Classic Motors, LLC v. Hudson River Park Trust*, Index No. 650712/2021 (the "State Court Action") and filed an Order to Show Cause in State Court seeking a *Yellowstone* injunction. (*Id.* ¶ 15.) The Debtor sought to toll the various notices served by HRPT to adjudicate the issues between the Debtor and HRPT. (*Id.*) The Debtor was granted a *Yellowstone* injunction in the State Court Action. (*Id.* ¶ 16.) But the State Court also required the Debtor to pay three months of past-due rent in full (approximately $175,000), as well as post a bond equal to the amount of past due rent claimed by HRPT (approximately $585,000).

On April 9, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. (*Id.* ¶ 17.) The Debtor claims that it sought the protections of the Bankruptcy Court to protect the Debtor, its operations and its valuable assets. (*Id.*) The Debtor' alleges that its valuable assets include (i) bank

4

accounts, (ii) accounts receivable, (iii) automotive parts and supplies, (iv) office furniture, fixtures, and equipment, (v) artwork, (vi) vehicles, (vii) shop equipment, (viii) contingent and unliquidated claims, and (ix) interest in the Concession Agreement. (*Id.* ¶ 18.) Additionally, on May 4, 2021, the Debtor filed a notice of removal of the State Court Action, which is now pending in this Court. (*Id.* ¶ 19.)

## II.    ANALYSIS

### A. The Chapter 11 Case Was Filed in Good Faith to Preserve the Debtor's Assets and Dismissal Is Not in the Best Interests of the Debtor's Estate.

Movants seek dismissal of this bankruptcy case as a bad faith filing pursuant to section 1112(b) of the Bankruptcy Code. HRPT contends that the bankruptcy petition was filed merely to frustrate HRPT, where the Debtor lacks any legitimate ability to reorganize.

Courts in the Second Circuit determine "bad faith" warranting dismissal of a chapter 11 case by analyzing the factors set forth in *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1311 (2d Cir. 1997) (the "*C-TC* Factors"). The *C-TC* court, in turn, derived the *C-TC* Factors from the eight factors identified by the district court and bankruptcy court in *Pleasant Pointe Apartments, Ltd. v. Kentucky Hous. Corp.,* 139 B.R. 828, 832 (W.D. Ky. 1992). The *C-TC* court explained:

> The bankruptcy court in *Pleasant Pointe* considered the following factors as indicative of a bad faith filing:
> (1) the debtor has only one asset;
> (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
> (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
> (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

5

>  (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
>  (6) the debtor has little or no cash flow;
>  (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and
>  (8) the debtor has no employees.

113 F.3d at 1311. *See also Phoenix Piccadilly, Ltd. v. Life Ins. Co. of Virginia (In re Phoenix Piccadilly, Ltd.)*, 849 F.2d 1393, 1394–95 (11th Cir. 1988); *Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.),* 779 F.2d 1068, 1071 (5th Cir. 1986).

The Debtor persuasively argues that the *C-TC* Factors weigh against dismissal. Examining each of these eight factors below, the Court concludes that the Motion to Dismiss has no merit.

(1)  The Debtor is an operating entity and, as such, has numerous assets typical with an operating business.  As set forth in the Debtor's schedules (the "Schedules," ECF Doc. # 39), the Debtor's assets include (i) bank accounts, (ii) accounts receivable, (iii) automotive parts and supplies, (iv) office furniture, fixtures, and equipment, (v) artwork, (vi) vehicles, (vii) shop equipment, (viii) intellectual property, (ix) contingent and unliquidated claims, and (x) interest in the Concession Agreement.  Although the Debtor's interest in the Concession Agreement is its most valuable asset, it is by no means its only asset.  As such, the first *C-TC* Factor weighs in favor of finding the Debtor did not file its chapter 11 case in bad faith.

(2)  The Schedules list a total of $7,821,469.63 of liabilities, consisting of $3,410,827.52 in secured debts, $268,947.48 in priority unsecured debts, and $4,141,694.63 in nonpriority unsecured debts.  The debt owed to HRPT totals

6

$557,526.07, which is 7.13% of the Debtor's total liabilities. Again, this *C-TC* Factor weighs in favor of finding the Debtor did not file its chapter 11 case in bad faith.

(3) The Debtor's interest in the Concession Agreement is not the Debtor's sole asset. The Debtor has additional assets and, more importantly, the interests of additional creditors should be taken into account. The Court must view the Debtor's estate as a whole, and not focus exclusively on HRPT's attempt to wrangle the Premises away from the Debtor. Accordingly, this *C-TC* Factor weighs in favor of finding the Debtor did not file its chapter 11 case in bad faith.

(4) This case is not a two-party dispute. As set forth in the Moseley Declaration, the Debtor has numerous legitimate creditors whose interests should be considered by the Court. Further, due to the COVID-19 pandemic, the Debtor's ability to operate its business has been limited, with the Debtor's business allegedly suffering a loss of $4 million in revenue. The Debtor's financial hardships resulting from the COVID-19 pandemic are another significant factor in the Debtor's decision to file its chapter 11 case. Again, this *CT-C* Factor weighs in favor of finding the Debtor did not file its chapter 11 case in bad faith.

(5) The Debtor admittedly filed this chapter 11 case following the entry of the order granting the Debtor a *Yellowstone* injunction, which required the Debtor to post a bond which it was unable to do because of its financial distress. Rather than being an indicium of bad faith, an inability to post a bond because of financial distress is often the sort of precipitating event that leads to a good faith bankruptcy filing. *See In re Sletteland*, 260 B.R. 657, 666 (Bankr. S.D.N.Y. 2001) (petition filed as alternative to posting a bond was not in "bad faith," even where debtor had no business operations or

employees). Here, the Debtor's purpose of the filing was to preserve the Debtor's interest in the Concession Agreement, without which it cannot rehabilitate, at least in the short term. There are also disputed issues of fact and law about the amount of rental arrears that the Debtor owes HRPT. A state court action raising these issues has now been removed to this Court so that the determination of the issues and claims can be determined on an expedited basis. Thus, this *C-TC* Factor weighs in favor of finding the Debtor did not file its chapter 11 case in bad faith.

(6) Although the Debtor admittedly has reduced cash flow as a result of the COVID-19 pandemic, now that the general population is receiving vaccinations, and restrictions are easing, the Debtor is expecting to see an increase in revenues as events open up and attendance increases. The Debtor is not even 45 days into its chapter 11 case and has filed one monthly operating report. The Debtor should be allowed time to resume operations and stabilize and reorganize its business, without the immediate threat of dismissal of its chapter 11 case as a bad faith filing. Accordingly, this *C-TC* Factor weighs in favor of finding the Debtor did not file its chapter 11 case in bad faith.

(7) The Debtor's reorganization effort is in its nascent stages. As the Debtor's business emerges from the COVID-19 pandemic, it is too early to make any assumptions about the Debtor's ability to meet its expenses. Accordingly, this *C-TC* Factor hasn't been satisfied.

(8) The Debtor employs nine employees. Thus, this *C-TC* Factor weighs in favor of finding the Debtor did not file its chapter 11 case in bad faith. Notwithstanding the COVID-19 pandemic, the State Court Action, and HRPT's hostile attempts to terminate the Concession Agreement, the Debtor has continued its efforts to operate its business

and project future operations.  The Debtor has been in contact with third parties who are prepared to invest in the Debtor's business once the State Court Action has been resolved.  Allowing the Debtor to operate is the only way to maximize the value of the Debtor's assets for all creditors and interest holders.

The *C-TC* Factors clearly weigh against dismissal.  The Court **CONCLUDES** that the chapter 11 case was filed in good faith to preserve the Debtor's assets and dismissal is not in the best interests of the Debtor's estate.  Therefore, the Motion to Dismiss is **DENIED.**

### B. The Automatic Stay Applies to the Concession Agreement, Which Did Not Terminate Pre-Petition.

In addition to the Motion to Dismiss, the Movants seek a determination that the automatic stay does not apply to the Concession Agreement or prevent HRPT from taking actions to recover possession of the premises that had been leased to the Debtor.  The Movants argue that section 362(b)(10) of the Bankruptcy Code applies.  That subsection provides an exception to the automatic stay for leases that terminate in accordance with their terms.  However, as of the Petition Date, the Concession Agreement was, and continues to be, in full force and effect.  (*Id.* ¶ 10.)  The issuance of the *Yellowstone* injunction by the State Court tolled the cure period set forth in the notice of default issued by HRPT, and it prevented the expiry of the Concession Agreement.  (*Id.* ¶ 11.)  The Debtor sought the injunction to preserve its rights in the Concession Agreement and prevent termination under the notice of default, and the State Court granted this relief.  While the injunction was in effect, the Debtor filed this chapter 11 case, which triggered the automatic stay under section 362 of the Bankruptcy Code.  As the cure period in the notice of default had not expired, the Concession Agreement was

9

not terminated and it remains in full force and effect. Therefore, the automatic stay is effective and prevents HRPT from taking any action in state court to recover the Premises.

### C.  Cause Does Not Exist for Relief from the Automatic Stay

The Movants argue that cause exists for relief from the automatic stay to continue the State Court Action. In determining whether "cause" exists to lift the automatic stay under section 362(d) to permit litigation to proceed in another forum, courts in the Second Circuit examine the twelve factors set forth in *In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990). The Court only applies the factors that are relevant to the particular case, not necessarily giving each factor equal weight. *In re Burger Boys, Inc.*, 183 B.R. 682, 688 (S.D.N.Y. 1994).

Here, the Court must determine whether to lift the automatic stay to continue the State Court Action which has already been removed to the Bankruptcy Court. The Debtor argues that following *Sonnax* factors weigh in favor of denying relief from the automatic stay:

> *i. Factor One—Whether Relief Would Result in a Partial of Complete Resolution of the Issues*: The Debtor submits that relief from the automatic stay to proceed with the State Court Action would only resolve one of several issues in the Debtor's chapter 11 case. The Debtor is an operating entity, with assets other than the Concession Agreement, and creditors other than Movants. As such, part of the Debtor's reorganization efforts will be to address repayment to its other creditors. Although the Debtor's interest

10

in the Concession Agreement is one of the most important factors in this chapter 11 case, it is not the only factor.

*ii. Factors Two—Lack of Any Connection with or Interference with the Bankruptcy Case; Seven—Whether Litigation in Another Forum Would Prejudice the Interests of Other Creditors; and Ten—the Interests of Judicial Economy and the Expeditious and Economical Resolution of Litigation:* The Debtor submits that granting relief from the automatic stay will interfere with this chapter 11 case because the Debtor will be forced to litigate with Movants in separate forums, State Court and Bankruptcy Court, causing an undue and unnecessary financial burden. Moreover, given that the Concession Agreement, the remaining term and the amounts due by the Debtor thereunder are issues central to the chapter 11 case, the Debtor submits that the Bankruptcy Court is the most economical and expeditious forum to adjudicate the disputes between the parties. For this very reason, the Debtor removed the State Court Action to the Bankruptcy Court for a streamlined and expedited determination of issues.

*iii. Factors Four—Whether a Specialized Tribunal with the Necessary Expertise Has Been Established to Hear the Cause of Action; and Eleven—Whether the Parties Are Ready for Trial in the Other Proceeding:* The State Court Action is not before a specialized tribunal. Discovery has not commenced, and the proceeding is in its nascent stages.

*iv. Factors Three—Whether the Other Proceeding Involves the Debtor as A Fiduciary; Five—Whether the Debtor's Insurer has Assumed Full*

*Responsibility for Defending the state court action; Six—Whether the Action Primarily Involves Third Parties; Eight—Whether the Judgment Claim Arising from the Other Action is Subject to Equitable Subordination; and Nine—Whether Movant's Success in the Other Proceeding Would Result in a Judicial Lien Avoidable by the Debtor:* None of these factors are relevant in this case and the Court need not consider them.

*v. Factor Twelve—Impact of the Stay on the Parties and the Balance of Harms*: Movants will not suffer harm if relief from the automatic stay is denied since the State Court Action has been removed to this Court for adjudication.

(Opposition ¶ 19.)

Considering the circumstances of this chapter 11 case and the *Sonnax* factors, the Court **CONCLUDES** that cause does not exist to grant Movants relief from the automatic stay.

### III.    CONCLUSION

For the reasons explained above, this chapter 11 case was filed in good faith. Additionally, the Concession Agreement—the Debtor's most valuable asset—was not terminated prepetition. The automatic stay remains in place preventing HRPT from taking any action outside the bankruptcy court to recover possession of the property, and, to the extent HRPT seeks an order from this Court lifting the stay, that relief is denied as well.

Whether the Debtor will be able successfully to reorganize remains far from certain, but like so many businesses in New York and elsewhere adversely impacted by COVID-19, it is entitled to a chance to do so.

**IT IS SO ORDERED.**

Dated:   June 4, 2021
         New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge